In the Matter of SHELTER DEVELOPMENT GROUP, INC., Debtor.

SHELTER DEVELOPMENT GROUP, INC., Plaintiff,

v.

MMA OF GEORGIA, INC., a Georgia corporation and Tierra Center Associates, a Pennsylvania limited partnership, Defendants.

Bankruptcy No. 84–01908–BKC–SMW. Adv. No. 84–0719–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

June 21, 1985.

Jerry Kahn, Miami, Fla., for debtor.

W. John Gundlach, Jr., West Palm Beach, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come before the Court for trial May 3, 1985 on Debtor's Amended Suit To Recover Money And Foreclose Mortgages, and the Court having reviewed the file, heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

SHELTER seeks relief on two promissory notes, one in the original principal amount of $430,000 and the other in the original principal amount of $550,000, executed by Defendant, MMA OF GEORGIA, INC. (hereinafter "MMA"), each of which is secured by a mortgage executed by Defendant, TIERRA CENTER ASSOCIATES, LTD., a limited partnership (hereinafter "THE PARTNERSHIP"). Count I of the Amended Suit demands Judgment for a payment allegedly due March 31, 1983 on one of the promissory notes. Count II seeks foreclosure of the $430,000 mortgage, and Count III seeks foreclosure of the $550,000 mortgage.

Initially the Court heard arguments on THE PARTNERSHIP's Motion to Amend Answer and Affirmative Defenses and to Assert Counterclaim, which the Court granted. Plaintiff alleged that MMA was in default for failing to respond to the complaint, and in fact, a default had been entered against MMA. However, this default was vacated by implication by an Order of this Court granting defendants motion to continue trial. This order recited that counsel for THE PARTNERSHIP had agreed in open court on March 18, 1985 that he would represent MMA if the trial of Adversary proceeding were continued, thereby rendering moot the Motion to Quash Service of Process which had been filed previously by said counsel on behalf of MMA.

The controversy between the parties concerns a sale and leaseback of a shopping center (hereinafter "THE CENTER") located in Plantation, Broward County, Florida. The documents executed at the closing of this transaction, which documents are clear and unambiguous, memorialize the following transaction.

SHELTER entered into a sales agreement with MMA (the "CONTRACT"), wherein SHELTER agreed to sell THE CENTER to MMA for, among other consideration, assumption of an underlying first mortgage to Peninsula Federal, $818,750 cash at closing and execution and delivery of two conditionally payable and subordinated purchase money mortgage notes, one for $430,000 and one for $550,000. Prior to closing, MMA assigned the CONTRACT to THE PARTNERSHIP.

At closing SHELTER conveyed THE CENTER to THE PARTNERSHIP. In consideration for the conveyance, MMA paid SHELTER $818,750 in cash, MMA assumed the underlying first mortgage to Peninsula Federal, MMA executed a short term conditionally payable and subordinated purchase money note to SHELTER in the amount of $430,000, which was secured by a mortgage executed by THE PARTNERSHIP on THE CENTER and MMA executed a conditionally payable and subordinated purchase money note to SHELTER in the amount of $550,000, which was also secured by mortgage executed by THE PARTNERSHIP on THE CENTER.

As required by the CONTRACT, at closing THE PARTNERSHIP net leased THE CENTER back to SHELTER pursuant to a MASTER LEASE for a period of ten years, which called for minimum fixed annual rentals of $595,000 per year in 1982 and 1983, $670,000 per year in 1984 and $760,000 per year in 1985 and for the balance of the term of the lease.

The $430,000 conditionally payable and subordinated note and mortgage and the $550,000 conditionally payable and subordinated note and mortgage were collaterally assigned by SHELTER to THE PARTNERSHIP to secure SHELTER's obligation to pay rent to THE PARTNERSHIP under the MASTER LEASE and to secure SHELTER's other obligations as the tenant under the MASTER LEASE. Financing statements and security instruments were immediately filed in all relevant state and county recording offices perfecting the security interests of THE PARTNERSHIP in the $430,000 conditionally payable and subordinated note and the $550,000 conditionally payable and subordinated note. Also, the mortgages securing both notes were collaterally assigned to THE PARTNERSHIP and such assignments were recorded in the appropriate office in Broward County.

Under both the $430,000 conditionally payable and subordinated note and the $550,000 conditionally payable and subordinated note, no payments whatsoever were due, unless and until, SHELTER met in all respects certain substantial and material preconditions to payment which preconditions were stated clearly and absolutely in the notes.

Based on all the evidence the Court has concluded that SHELTER is not entitled to prevail on any of the counts of the Amended Suit filed in this Adversary proceeding. There are several reasons for this conclusion.

It is undisputed that SHELTER did not hold the original $430,000 promissory note or the original $550,000 note at the time of trial and in fact, SHELTER never held said notes, because they were collaterally assigned to THE PARTNERSHIP as indicated hereinabove from the time of the closing of the sale and leaseback of THE CENTER.

 It is axiomatic that a suit cannot be prosecuted to foreclose a mortgage which secures the payment of a promissory note, unless the Plaintiff actually holds the original note. *Downing v. First National Bank of Lake City*, 81 So.2d 486, (Fla.,1955). It is also axiomatic that where a note and mortgage have been collaterally assigned, the assignee is the real party in interest to bring an action to foreclose the

mortgage. *Tamiami Abstract and Title Company v. Berman* 324 So.2d 137 (Fla. 3rd D.C.A., 1975); *Laing v. Gainey Builders Inc.,* 184 So.2d 897 (Fla. 1st D.C.A., 1966). Under these authorities, SHELTER's Adversary proceeding must be dismissed with prejudice solely on the basis that SHELTER does not hold the original notes and on the basis that SHELTER has no standing to bring action on the notes, which along with the mortgages were collaterally assigned at the closing.

Furthermore, the evidence established that, in any case, SHELTER failed to meet the preconditions to payment, which are recited in the subject notes.

One of the stated preconditions to payment was that the Master Lease be in good standing, without default and all rentals be current. In this regard, SHELTER was continuously in default of the lease, from the day the lease was executed on September 30, 1982 as evidenced by copies of numerous default letters from THE PARTNERSHIP to SHELTER which defaults were not contested by SHELTER. Subsequently, the lease was terminated by Notice of Default dated September 20, 1984, after SHELTER tendered a check to THE PARTNERSHIP in partial payment of September, 1984 rent which check was returned for non-sufficient funds. The September, 1984 rent was never received by THE PARTNERSHIP. Thereafter, SHELTER's attorney signed a letter agreement acknowledging that the MASTER LEASE had been properly terminated in accordance with its terms, and SHELTER, after filing the instant Petition under Chapter 11, rejected the lease.

■ SHELTER's rejection of the MASTER LEASE has an added significance because SHELTER must be deemed as a matter of law to have rejected the subject notes on which SHELTER has brought suit at the same time that SHELTER rejected the MASTER LEASE. This is so because the notes and mortgages, and the collateral assignments of such notes and mortgages and the MASTER LEASE, were all executed as part of a single sale and leaseback transaction, and therefore all of these documents must be read and construed together as one instrument giving rise to a unitary transaction. *Boyette v. Carden,* 347 So.2d 759 (Fla. 1st D.C.A., 1977). A debtor may not reject the undesirable aspects of a transaction while maintaining and continuing to claim the benefits of that transaction. In Re: *Flores* 32 B.R. 455 (Bkrtcy.S.D.Texas 1983). Thus, when SHELTER elected to reject the MASTER LEASE, it also as a matter of law rejected all of its right, title and interest in and to the notes and mortgages on which SHELTER has erroneously attempted to bring the subject Adversary proceeding.

■ The Court has considered and rejected SHELTER's argument that a document signed at the closing captioned "Assignment of Leases" had the effect of voiding the MASTER LEASE so that SHELTER was never obligated to perform any obligations under the MASTER LEASE, including the obligation to pay rent to THE PARTNERSHIP. This construction of the Assignment of Leases is not persuasive, in that it requires an interpretation clearly in opposition to the clear and unambiguous language of the Assignment of Leases and the other documents executed at the closing, and it is inconsistent with the actions of SHELTER in making payments or partial payments of rent under the MASTER LEASE for a period of approximately two years after the closing. Furthermore, the construction urged by SHELTER is inconsistent with the structure of the subject transaction as disclosed by the contract and other clear and unambiguous documents executed at the closing and the testimony of the witnesses at trial which established that the transaction had as its very essence the payment of rent to THE PARTNERSHIP under the MASTER LEASE.

■ The Court also rejects SHELTER's argument that a Stipulated Agreement filed in the subject bankruptcy proceeding dated November 8, 1984, constitutes an admission that the above referenced Assignment of Leases effactually terminated the MASTER LEASE. In this regard, the

Court finds that the Stipulated Agreement was an amicable resolution of a Motion To Stop The Use Of Cash Collateral and a Motion For Order Granting Relief From Stay, Or Alternatively For Adequate Protection filed in the bankruptcy proceeding by counsel for the Defendants in this Adversary proceeding to prevent SHELTER from collecting and using rents under the sub-leases between SHELTER as sub-lessor and various third parties who were the sub-lessees and operating tenants in possession of the subject shopping center. The Stipulated Agreement had nothing whatsoever to do with the MASTER LEASE and thus could not have extinguished SHELTER's obligations under the MASTER LEASE.

■ It is undisputed that SHELTER has also failed to meet the precondition to payment of the subject promissory notes requiring that there be operating tenants in actual physical possession of THE CENTER obligated to pay aggregate rentals within the following twelve (12) months in an amount equal to or greater than (a) the rentals due Landlord from Tenant ... plus (b) all expenses in connection with THE CENTER not paid or reimbursed by operating tenants. SHELTER introduced no evidence to support any argument that this condition had ever been met. SHELTER's assertion that the failure to meet this precondition was caused by THE PARTNERSHIP's inquiries about the financial, business and credit history of one particular prospective tenant (who would have obligated THE PARTNERSHIP for the cost of major leasehold improvements, and to whom $120,000 per annum would have been receivable in rent) is unsupported by the evidence.

Furthermore, the evidence established that SHELTER failed to meet another precondition to payment of the subject notes which required SHELTER to have completed construction of all improvements on THE CENTER. THE PARTNERSHIP submitted a Construction Bid evidencing that THE CENTER is still not completed, and that the cost to complete construction of THE CENTER was approximately $98,-000. SHELTER did not argue that construction was in fact ever completed.

Thus, the evidence established that SHELTER failed to meet at least three (3) of the five (5) stated preconditions to payment of the subject promissory notes.

■ SHELTER's counsel argues that SHELTER should prevail because the subject notes and mortgages were not executed in accordance with THE CONTRACT entered into between SHELTER as seller and MMA as purchaser prior to the closing. Counsel argues that since MMA was the contract purchaser, MMA should have taken title to the subject property and should have executed the mortgages which secured payment of the subject notes to SHELTER. This argument fails in light of the unambiguous language of THE CONTRACT, which provides that MMA has the right to sell or assign in whole or in part its rights under THE CONTRACT. The evidence established that MMA did assign its rights under THE CONTRACT to THE PARTNERSHIP. As a result, the transaction was "closed" so that MMA executed both purchase money notes to SHELTER, and THE PARTNERSHIP took title to THE CENTER and executed the mortgages securing the notes. There was nothing improper in this procedure since it was done in accordance with THE CONTRACT.

■ The Court also rejects SHELTER's argument that MMA waived the preconditions to payment of the subject notes and mortgages. The evidence was overwhelming that MMA never waived the preconditions to payment and although MMA and THE PARTNERSHIP from time to time indicated a willingness on their part to attempt to work with SHELTER to assist SHELTER in connection with SHELTER's cash flow problems, at the same time MMA and THE PARTNERSHIP at all times insisted on the preservation of their legal rights under the MASTER LEASE, as well as under the subject notes and mortgages and other documents executed in connection with the closing (September 30, 1982).

Since SHELTER's action to foreclose on the two subject mortgages must be based on defaults under the promissory notes secured by such mortgages, and since (a) SHELTER is not the holder of the notes, (b) the notes, by their express terms, are not due, and (c) the notes and mortgages are the property of, and forever vested in, THE PARTNERSHIP under the terms of the Collateral Assignment due to SHELTER's default under the MASTER LEASE (and termination of said MASTER LEASE) SHELTER has failed to meet its burden, to establish a right to recover on any of the Counts of the Amended Suit, and it is unnecessary to discuss the Affirmative Defenses asserted on behalf of MMA and THE PARTNERSHIP.

THE PARTNERSHIP filed a Counterclaim which seeks a money judgment against SHELTER in Counts I, II and III. The Court has determined that it would be premature to consider these Counts of the Counterclaim at the present time and in the event that THE PARTNERSHIP desires to pursue said claims further, THE PARTNERSHIP is hereby authorized to file a Proof of Claim herein within fifteen days from the date of these Findings and Conclusions.

For the reasons set forth above, the Court finds for THE PARTNERSHIP with respect to Count IV of THE PARTNERSHIP's counterclaim seeking entry of judgment to the effect that all right, title and interest in and to the $430,000 note and mortgage and the $550,000 note and mortgage are vested in THE PARTNERSHIP by reason of the Collateral Assignment of said notes and mortgages from SHELTER to THE PARTNERSHIP and SHELTER's default under the MASTER LEASE.

A separate judgment will be entered herein dismissing the Amended Complaint with prejudice, dismissing Counts I, II and III of the Counterclaim without prejudice and entering judgment for THE PARTNERSHIP on Count IV of the Counterclaim.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is Ordered and Adjudged that the Amended Suit To Recover Money And Foreclose Mortgages is dismissed with prejudice, that Counts I, II and III of the Counterclaim are dismissed without prejudice and that all right, title and interest in and to the $430,-000 note and mortgage and the $550,000 note and mortgage which are the subject of Count IV of the Counterclaim are vested in TIERRA CENTER ASSOCIATES, a Pennsylvania Limited Partnership.

The Court reserves jurisdiction of this matter to entertain motions for taxation of costs and/or for award of attorney fees.